Kinkade, J.
 

 This was an action in the trial court instituted by a county treasurer, seeking to establish a priority in his favor as against the general creditors of a bank, the assets and property of which had passed into the hands of the state superintendent of banks. At the time the assets of the bank passed into the hands of the state superintendent of banks, the bank had.in its possession, in round figures, $10,000. It had in the hands of other banks two items of credits totaling $59,000, in round figures. At the time the
 
 *383
 
 assets of the bank passed into tbe bands of tbe superintendent of banks, tbe county treasurer bad a credit on tbe books of tbe bank to tbe extent of $77,000, in round figures. It was not possible to identify, in kind, any of tbe county deposits. Tbe trial court found tbe issues in favor of the superintendent of banks, and denied entirely tbe right of priority sought to be enforced in favor of tbe county treasurer. Tbe Court of Appeals reversed tbe judgment of tbe court of common pleas, and entered a decree in favor of tbe county treasurer to the extent, and to tbe extent only, of tbe funds that tbe bank bad in its own possession at tbe time its assets were taken over by tbe state superintendent of banks, but denied tbe priority in funds standing to tbe credit of tbe closed bank in tbe bands of other banks.
 

 It is conceded that if tbe deposits made in tbe bank by tbe county treasurer were legally made, then no priority can obtain in behalf of tbe treasurer; but it is insisted that these deposits were not legal deposits when made, and hence a trust arose with respect to tbe deposits as against tbe general creditors of tbe bank, by reason of tbe fact that tbe funds never legally passed into tbe bands of tbe bank.
 

 These funds placed in tbe bank by tbe county treasurer were placed there under and pursuant to tbe general depositary laws of tbe state, Sections 2715 to 2737, inclusive, General Code. A reading of the depositary laws enacted by tbe Legislature for tbe depositing of public funds in banks by county treasurers discloses at once what tbe object and purpose of tbe Legislature was in enacting these statutes; that is to say, tbe Legislature desired to place tbe idle money belonging to the county that was in tbe bands of tbe county treasurer where tbe money would earn interest for tbe county instead of lying idle in tbe vault of tbe treasurer, and therefore the plan was formulated and enacted into law by tbe Legislature, authorizing the
 
 *384
 
 county treasurer to advertise for competitive bids from banks for the use by the banks of the money of the county, and, on the coming in of those bids from banks, the county commissioners were authorized to select from the bidders the banks that should act as depositaries of the county, and to which the county treasurer was authorized to turn over the moneys in his possession. It was not at all the plan of the depositary laws to place the county money in banks where it should be held separate and apart from other money of the bank, and not used as current funds of the bank. If the money had been so deposited, manifestly the money would have been of no use to the bank. The banks would only bid for the use of the money if the banks bidding were authorized to use the money in the form of loans on interest, or in purchasing securities that bore interest. That was the only way in which any benefit could arise to the banks that would justify the banks in bidding for the use of the money, and the plan clearly indicated that the Legislature expected the bank to use the money for the purpose of earning more than the amount which the bank agreed to pay to the county for the use of the money. It appears very definitely in the enactments of the Legislature that the banks selected by the county commissioners from the list of bidders were required to give ample security to the county treasurer for the return of the funds so deposited, whenever return of the funds was necessary to meet the obligations of the county. The depositary laws fixed the number and qualifications of the sureties that' were to be given and that must be satisfactory to the county commissioners, and also the kind and character of securities which might be accepted by the county commissioners in lieu of bond, for the return of the funds, and, in addition to this, the depositary laws required that the surety bonds so given should be obligations that operated continuously so
 
 *385
 
 long as there was any portion of the funds placed in the bank that had not yet been returned to the county treasurer. The fact that some of the funds were treated as active funds by the bank, subject to check at any time by the county treasurer, and other funds were treated as inactive, in no wise affected the legal situation.
 

 The continuous character of the guaranty given by the bank for the use of the funds is a very significant feature of the depositary law. Ample provisions were made for reducing the amount of the guaranty as the amount in the bank might be reduced by refunder. The law distinctly provided that the bond should be continuous, and that it should run until another bond was given to take its place, and, notwithstanding the fact that the bond named a fixed period for which it should run, it also contained the provision that it should continue until another bond was given to take its place. When a complete refunder had been made, that would of course terminate the bond. It would be difficult indeed to employ any terms that would more definitely settle the question that the bond must be continuous in character. This covers, among other contingencies, the close of the elective term of the treasurer and the coming into office of his successor. The Legislature evidently intended that no occurrence of that kind should operate to release the bank or any of the sureties on the bond prior to the time when all the money that had been deposited with;the bank had been returned to the county treasury.
 

 In the instant case, the time covered by the contract between the bank and the treasurer had expired, but the funds had not all been returned to the treasury. The county commissioners had renewed their selection of the bank as a depositary, but a new obligation, signed by the sureties required by the statute, was not given prior to the time when further deposits were made.
 

 
 *386
 
 Attention is called to the fact that the word “or” instead of the word “and” is used in the law with reference to the termination of the bond, and. it is said that if the word “or” in the statute be read as “and,” the bond would run in perpetuity, without any fixed method or time under the law of terminating it. We are not able to see any substantial merit in this claim. We think the situation is precisely the same, in view of all the provisions of the depositary law, whether the word “or” be used, or the word “and” be used. In any event, while any of the money remains in the hands of the bank, the obligation of the bank and its sureties is continuous to the end that all the money must be refunded to the county treasury before the bank or its sureties can be released from obligation.
 

 It was evidently the intention of the Legislature that the bank should give such security for the return of the money as would bring the money back into the county treasury, no matter what financial disasters or embarrassment might attend the affairs of the bank. If the Legislature had intended that the deposits of county money in the bank should in some way become trust money, and give rise to a priority in favor of the county as against the general depositors and creditors of the bank, then several very definite provisions of the depositary law might quite as well have been omitted, and a very brief enactment substituted therefor, to the effect that money so deposited by the county, regardless of its use by the bank, would still be trust money, and entitled to priority as against general creditors of the bank. The position of the plaintiff in error is not in accord with the object and purpose of the depositary laws. It is said by counsel for plaintiff in error that great embarrassment attends the discharge of the duties resting upon the state superintendent of banks with respect to priorities claimed as against general creditors of the banks
 
 *387
 
 throughout the state, and that it would be very serviceable and would greatly expedite the discharge of his duties by the superintendent of banks if some general principle, such as contended for by the plaintiff in error, could be announced by this court. It is rarely, if ever, a safe course for courts to announce general principles covering situations and conditions that may arise in the future and be quite at variance with the facts in the particular case under consideration. Such a course does not seem to this court to be practicable in this case.
 

 For the reasons stated, we think the judgment of the Court of Appeals must be reversed, and that of the court of common pleas affirmed, and such will be the judgment here.
 

 Judgment of the Court of Appeals reversed and that of the common, pleas affirmed.
 

 Jones, Matthias, Day, Allen and Stephenson, JJ., concur.